IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| WARREN OSCAR JOHN ABRAHAMSON, | CV 16-103-GF-JTJ |
| Plaintiff, | **ORDER** |
| vs. | |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Warren Abrahamson (Mr. Abrahamson) appeals the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, after a hearing before an administrative law judge (ALJ). For the reasons set forth below, the Court grants the Commissioner's motion for summary judgment.

## I. FACTS AND PROCEDURAL HISTORY

Warren Abrahamson brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner denying his application for

1

disability benefits.  Mr. Abrahamson filed his application for disability insurance benefits on November 30, 2012, alleging a disability onset date of June 11, 2012. (Doc. 7 at 137-43).  Mr. Abrahamson was 48 years old when he filed his application.  (*Id.*)  Mr. Abrahamson claimed he was disabled due to: degenerative disc disease, asthma, and obesity.  (*Id.* at 14-17).

Mr. Abrahamson's claim was denied on March 26, 2013, (*Id.* at 86-89), and again upon reconsideration on July 29, 2013.  (*Id*. at 90-91).  Mr. Abrahamson made an untimely request for a hearing before an ALJ on December 18, 2013.  (*Id*. at 92).

The ALJ conducted a hearing on December 9, 2014. (*Id.* at 29-62).  The ALJ initially determined that although Mr. Abrahamson's request for a hearing was untimely there was good cause for the untimely filing.  (*Id.* at 12).  On March 13, 2015, the ALJ concluded that Mr. Abrahamson was not disabled and denied his claim for disability benefits.  (*Id.* at 12-24).

Mr. Abrahamson timely requested a review the ALJ's decision on May 5, 2015.  (*Id.* at 8).  The Appeals Council for the Commissioner denied Mr. Abrahamson's request for review on July 13, 2016, making the ALJ's decision the Commissioner's "final decision."  (*Id.* at 1-6).

Mr. Abrahamson timely filed a complaint on September 12, 2016, seeking

judicial review of the Commissioner's decision. (Doc. 2). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). The parties consented to the undersigned conducting all further proceedings in this matter. (Doc. 10). The Great Falls Division of the District of Montana is the proper venue because Mr. Abrahamson resides in Phillips County, Montana. (Doc. 1 at 2); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

Mr. Abrahamson filed an opening brief on March 30, 2017, requesting that the Court reverse the Commissioner's decision and remand for proper consideration or, in the alternative, for an award of benefits. (Doc. 12). The Commissioner filed a response brief on May 1, 2017, requesting that the Commissioner's decision to deny benefits be affirmed. (Doc. 13). Mr. Abrahamson filed a reply brief on June 15, 2017. (Doc. 16). The motion is ripe for decision.

## II.  STANDARD OF REVIEW

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of SSA*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156). Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not

4

supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of SSA*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Id.* at 954.  The five steps of the inquiry are:

1.     Is the claimant presently working in a substantially gainful

activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id.*

## IV. BACKGROUND

### A. ALJ's determination

At step one, the ALJ determined that Mr. Abrahamson had not engaged in substantial gainful activity since June 11, 2012, the alleged onset date. (Doc. 7 at 14) At step two, the ALJ found that Mr. Abrahamson had the following severe impairments: degenerative disc disease, asthma, and obesity. (*Id.* at 14-17).

At step three, the ALJ found that Mr. Abrahamson did not have an impairment, or combination of impairments, that met or was medically equal to

6

one of the listed impairments.  (*Id*. at 17)

Before considering step four, the ALJ assessed Mr. Abrahamson as having had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: Mr. Abrahamson can lift, carry, push and pull ten pounds frequently and twenty pounds occasionally; he can walk and stand six hours in an eight hour workday and sit six hours in an eight hour work day; he must be able to alternate between sitting, standing, and walking during normal work breaks; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation, and should avoid hazards including wet, slippery, uneven surfaces. (*Id.* at 18-23).

At step four, the ALJ determined that with his RFC, Mr. Abrahamson was unable to perform any of his past relevant work.  (*Id.* at 23).

At step five, the ALJ determined that, considering Mr. Abrahamson's age, education, work experience, and RFC, Mr. Abrahamson would be able to perform work as a parking attendant, a delivery courier, and an office helper.  (*Id.* at 23-24) Therefore, the ALJ determined that Mr. Abrahamson has not been under a disability, as defined in the Social Security Act, from June 11, 2012, though the

ALJ's March 13, 2015 decision.

**B.    Mr. Abrahamson's Position**

Mr. Abrahamson argues the Court should reverse the Commissioner's decision and remand the case to the Commissioner for the immediate award of benefits or further hearing because:

1.    The ALJ erred in failing to determine that his myofascial pain syndrome, depression, and anxiety were severe impairments;

2.    The ALJ erred in evaluating his credibility;

3.    The ALJ erred in evaluating the medical evidence; and

4.    The ALJ erred failing to pose a hypothetical to the vocational expert that included all of his limitations.  (Doc. 12).

**C.    The Commissioner's Position**

The Commissioner argues that the Court should affirm the Commissioner's decision because:

1.    Mr. Abrahamson did not meet his burden in establishing any additional medically determinable impairments were severe;

2.    The ALJ provided clear and convincing reasons for discounting Mr. Abrahamson's credibility;

3.    The ALJ provided legally sufficient reasons in evaluating the medical evidence; and

4.    The ALJ's hypothetical to the vocational expert accounted for all of Mr. Abrahamson's limitations.  (Doc. 13).

# V. ANALYSIS

## A.    Step Two

Mr. Abrahamson argues that the ALJ erred at step two in failing to determine that his myofascial pain syndrome, depression, and anxiety were severe impairments.

### 1.    Legal Standards

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs-the results of 'medically acceptable clinical diagnostic techniques,' such as tests-as well as symptoms," of a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is not enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

Step two of the five-step sequential inquiry imposes a *de minimis* screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." *Id.*

An impairment is found "not severe" at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. *Id.* An impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Id.* at 1290. Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling." *Id.* The claimant bears the burden of establishing the existence of a severe impairment. *Bowen v. Eckert*, 482 U.S. 137, 146 (1987).

### 2. Analysis

#### a. Myofascial pain syndrome

At the outset, Mr. Abrahamson bears the burden of proving that he suffers from myofascial pain syndrome. In attempting to meet this burden, Mr. Abrahamson points to two treatment notes that mention myofascial pain syndrome. The first is a December 16, 2011, treatment note in which Dr. Medina states, "Cymbalta has shown to be effective in some types of chronic myofascial pain syndrome which is what it sounds like he might have." (Doc. 7 at 359). The second is an August 8, 2012, treatment note in which Dr. Medina states, "I am at the point where I am considering a diagnosis of chronic myofascial pain." (*Id.* at 350). Neither note expresses an

opinion from Dr. Medina that Mr. Abrahamson actually has myofascial pain syndrome. Rather, the notes only establish that Dr. Medina is wondering and considering whether myofascial pain syndrome may be the cause of Mr. Abrahamson's complaints of back pain. Because the medical record fails to establish an actual diagnosis of myofascial pain syndrome, Mr Abrahamson has failed to meet his burden of proving that he has myofascial pain syndrome.

### b.    Mental impairments

The ALJ determined that Mr. Abrahamson's depression and anxiety were medically determinable impairments, but that, considered singly or in combination, they did not cause more than minimal limitation on his ability to perform basic work activities. (Doc. 7 at 15). In arriving at this conclusion, the ALJ considered the four broad functional areas known as the "paragraph B" criteria. (*Id.*) The ALJ determined the following in relation of these criteria: 1) activities of daily living - mild limitations; 2) social functioning - no limitation; 3) concentration, persistence or pace - no limitation; 4) episodes of decompression - none of extended duration. (*Id.*) Based upon these determinations, the ALJ concluded that Mr. Abramson's mental impairments of depression and anxiety were not severe. (*Id.* at 16).

The ALJ went on to assess Mr. Abrahamson's residual functional capacity as reflected by the degree of limitation he found in the paragraph B criteria. (*Id.*) The

ALJ considered the following factors: 1) Dr. Medina's October 2012 note that Mr. Abrahamson was doing pretty well with his current therapy, which was helping his anxiety; 2) Dr. Medina's January 2014 note that reflects Mr. Abrahamson reporting that his depression was "fairly under control," but influenced by his day to day pain level; 3) the opinions of state agency psychological consultants Drs. Brill and Bateen, to whom the ALJ assigned significant weight, that Mr. Abrahamson had mild restriction in activities of daily living, no restriction in maintaining social functioning, no restriction in maintaining concentration, persistence, or pace, and no episodes of decompression; 4) Mr. Abrahamson's Global Assessment of Functioning (GAF) scores, ranging from 53 to 62. (*Id.*) Based upon her consideration of these factors, the ALJ determined that Mr. Abrahamson's depression and anxiety were not severe. (*Id.*)

Mr. Abrahamson argues that the ALJ erred because he was diagnosed with and treated for depression and anxiety. However, the ALJ was fully aware that Mr. Abrahamson was diagnosed and treated for depression and anxiety as evidenced by her evaluation of Mr. Abrahamson's depression and anxiety. Furthermore, Mr. Abrahamson does not argue how the ALJ erred in determining that his depression and anxiety were not severe. Therefore, Mr. Abrahamson has failed to establish that the ALJ's evaluation was erroneous.

Mr. Abrahamson also argues that his GAF scores, which ranged from 53 to 62, establish that the ALJ erred in determining his depression and anxiety were not severe at step two.  However, the ALJ reviewed and considered the following as the basis for discounting Mr. Abrahamson's GAF scores in determining the overall severity of his depression and anxiety: 1) GAF scores between 51 and 60 indicated moderate symptoms and difficulty in social, occupational, or school functioning and that scores between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning with the individual generally functioning pretty well, with some meaningful interpersonal relationships; 2) GAF scores are based upon the consideration of many factors of which mental diagnosis and any associated limitations are but a few; 3) GAF scores are simply a snapshot of an individual's global level of functioning at a particular point in time.  (*Id.*)  In addition, the ALJ noted that although no significant weight was accorded to Mr. Abrahamson's GAF scores, they did show continued improvement in his condition.  (*Id.*)

Mr. Abrahamson does not argue that the ALJ's reasons were legally impermissible or not supported by substantial evidence.  Nevertheless, the Court determines that substantial evidence supports the ALJ's evaluation of Mr. Abrahamson's GAF scores in the context of determining whether his depression and anxiety were not severe at the step two and that the ALJ did not commit legal error in

so doing.

### c.   Harmless error

Assuming the ALJ erred in failing to determine that myofascial pain syndrome and/or mental impairments were not severe, these determinations could only have prejudiced Mr. Abrahamson at step three (listing impairment determination) and step five (RFC determination) because his claim proceeded beyond step two. *Burch v. Barnhart*, 400 F.3d 676, 682-83 (9th Cir. 2005). Here, Mr. Abrahamson does not argue that the ALJ erred at step three in relation to myofascial pain syndrome or mental impairments. In relation to the RFC assessment, the ALJ considered the back pain about which Mr. Abrahamson complained and that Dr. Medina considered might be caused by myofascial pain syndrome as well as the limitations Mr. Abrahamson attributed to his mental impairments. (Doc. 7 at 18-19). Therefore, the Court determines that any ALJ error at step two, if any, was harmless.

### B.   Mr. Abrahamson's Credibility

Mr. Abrahamson argues that the ALJ erred in discounting some of his statements regarding the severity of his symptoms.

### 1.   Legal Standards

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must

determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' " *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). In this analysis, the claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Nor must a claimant produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison,* 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-1015 (citing *Smolen*, 80 F.3d at 1281); *see also Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006) ( "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison,* 759 F.3d at 1015

(citing *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997)). The ALJ's credibility determination must set forth findings sufficiently specific to permit the court to concluded that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas*, 278 F.3d at 958).

## 2. Analysis

The ALJ offered three reasons for discrediting some of Mr. Abrahamson's testimony regarding his symptoms: 1) he failed to follow treatment advice; 2) the objective medical evidence did not support the symptoms he described; and 3) his symptoms were alleviated by minimal conservative treatment. (Doc. 7 at 19-21).

Initially, an unexplained or inadequately explained failure to follow a prescribed course of treatment is a legally acceptable reason for discounting a claimant's statements and testimony regarding symptom severity. *Tommasetti*, 533 F.3d at 1039. The ALJ noted that on July 10, 2012, Mr. Abrahamson reported to a

physician assistant that "he had not been working with his exercises recently" and that he had been instructed to supplement his prescription pain medication with ibuprofen to control his pain but he failed to do so. (Doc. 7 at 21). A review of the medical records reveals that substantial evidence supports this specific, clear and convincing reason. (*Id*. at 289, 499).

Next, a lack of medical evidence is a legally acceptable reason for discounting a claimant's symptom statements and testimony. *Burch,* 400 F.3d at 681. In support of her decision, the ALJ noted that the diagnostic imaging of Mr. Abrahamson's back showed only mild abnormalities with no nerve root compression. (Doc. 7 at 19-20, 319). Furthermore, in November of 2012, Mr. Abrahamson reported improved functioning and less discomfort after facet joint blocks and that his strength was improving with exercise. (*Id.* at 19, 271-72). A review of the medical record reveals that substantial evidence supports this specific, clear and convincing reason.

Finally, a favorable response to conservative treatment is a legally acceptable reasons for discrediting a claimant's symptom testimony. *Tommasetti*, 533 F.3d at 1040. The ALJ's decision discussed the following: for three years after injuring his back in 2008 Mr. Abrahamson cared for his back by intermittently visiting his primary care physician (Doc. 7 at 19, 298-311, 314-31, 362-80, 453-54); on July 15, 2010, Mr. Abrahamson applied for a commercial driver's license and specifically denied chronic

low back pain (*Id.* at 19, 364); in 2013, Dr. Cherry noted that Mr. Abrahamson had at least three months of good relief from a steroid injection and that his pain responded well to low-dose methadone to the extent that he was able to wean himself off of most pain medication and he was no longer taking hydrocodone (*Id.* at 19, 420); surgery on his back was not recommended (*Id.* at 19, 289). A review of the medical record reveals that substantial evidence supports this specific, clear and convincing reason. (*Id.* at 289, 499).

Mr. Abrahamson does not argue that the ALJ's stated reasons for discounting his symptom testimony are not legally acceptable or that there is not substantial evidence supporting these reasons. Rather, Mr. Abrahamson argues that the ALJ only made general findings and that the ALJ's recitation of the facts is inaccurate and incomplete.

However, "[w]here evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Therefore, the fact that Mr. Abrahamson can point to evidence that supports his claim and detracts from the ALJ's decision does not mean that the ALJ's reasons for discrediting some of his symptom statements and testimony were not for specific, clear and convincing reasons supported by substantial evidence.

### C.    Medical Opinions

#### 1.    Legal standards

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). An examining physician's opinion in turn "carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2).

The ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). To discount the controverted opinion of a treating physician, the ALJ must provide " 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751. Similar standards apply to the ALJ's evaluation of an examining physician's opinion.

*Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

"Other sources" such as nurse practitioners may be discounted only if the ALJ gives a germane reason for doing so. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

### 2. Analysis

#### a. Dr. Medina

Dr. Medina provided three evaluations of Mr. Abrahamson's functioning in December 2012, November 2013, and December 2014. (Doc. 7 at 312, 497, 517-19). Dr. Medina's December 2012 and December 2014 evaluations expressed opinions consistent with Mr. Abrahamson being unable able to work a full eight-hour day, but his November 2013 evaluation expressed an opinion consistent with Mr. Abrahamson being able to perform light work on a full-time basis. Mr. Abrahamson argues that the ALJ erred in giving "very little weight" to Dr. Warren's opinions. (Doc. 12 at 24). The only opinions from Dr. Medina that the ALJ gave "very little weight" were those set forth in Dr. Medina's December 2014 evaluation. (Doc. 7 at 22). The ALJ gave the following reasons for giving very little weight to Dr. Medina's December 2014 evaluation and opinions: 1) it is not supported by detailed examination notes or objective finding; 2) it is not consistent with the record. (*Id.*)

In relation to the first reason, the ALJ need not accept the opinion of a treating

physician, or any other physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Chaudhry v. Astrue,* 688 F.3d 661, 671 (9th Cir. 2012). Mr. Abrahamson did not advance an argument that this reason was erroneous in his opening brief. Rather, he only argued that the ALJ's second reason was erroneous. Therefore, the first reason alone provides a sufficient legal basis for determining that the ALJ decision to give very little weight to Dr. Medina's December 2014 evaluation and opinions was not error.

In relation to the second reason, an ALJ properly may discount a treating physician's opinions that are in conflict with treatment records or are unsupported by objective clinical findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (conflict between treating physician's assessment and clinical notes justifies rejection of assessment); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); 20 C.F.R. §§ 404.1527(c), 416.927(c) (factors to consider in weighing treating source opinion include the supportability of the opinion by medical signs and laboratory findings as

well as the opinion's consistency with the record as a whole).

The ALJ determined that Dr. Medina's December 2014 evaluation and opinions were inconsistent with the objective medical evidence because: Mr. Abrahamson had mild degenerative disc disease (Doc. 7 at 22, 279), he ambulates independently (*Id.* at 22, 276, 439, 488), he has no spasms (*Id.* at 22, 271, 288), he has normal strength (*Id.* at 22, 491, 499), and he has no gross neurological deficits (*Id.* at 22, 449, 491). The ALJ also determined that Dr. Medina's 2014 evaluation and opinions were inconsistent with Dr. Medina's own findings that Mr. Abrahamson was in no acute distress throughout his visits from June 2013 through October 2014 (*Id.* at 481-512) and the fact that Dr. Medina spoke with Mr. Abrahamson in January of 2014 about returning to work in a different capacity in a modified job description so he would not have to use his back. (*Id.* at 22, 499). The Court determines that the ALJ did not err in assigning Dr. Medina's December 2014 evaluation and opinions very little weight because the reasons he gave for doing so are specific and legitimate in addition to being clear and convincing, and the reasons are supported by substantial evidence.

Mr. Abrahamson argues that Dr. Medina's December 2014 evaluation and opinions are not inconsistent with the objective medical evidence because "[Mr. Abrahamson] never alleges an inability to ambulate, nor does Dr. Medina appear to

base any of his functional limitations on ability to ambulate, strength or spasms." (Doc. 12 at 24-25). Mr. Abrahamson also argues that Dr. Medina "diagnosed" Mr. Abrahamson with myofascial pain syndrome and repeatedly mentioned his myofascial pain syndrome in his opinion. (*Id.* at 25). Finally, although Mr. Abrahamson concedes that the objective findings are "mild," he further argues that "Dr. Medina's notes contain plenty of other objective findings that support his opinion." (*Id.*)

However, as the Commissioner points out, Dr. Medina did opine in his December 2014 evaluation on Mr. Abrahamson's ability to ambulate (can walk a half a block before resting, stand for ten minutes, stand and walk two out of eight hours) and his strength (can occasionally lift/carry less than ten pounds). (Doc. 7 at 51). Furthermore, Dr. Medina never rendered a diagnosis of myofascial pain syndrome and he never mentions it in his December 2014 evaluation. (Doc. 7 at 350, 359-60, 516-519). Finally, although Mr. Abrahamson points to medical evidence that supports his claim, the ALJ identified specific facts in the medical record that are inconsistent with Dr. Medina's December 2014 evaluation and opinions. The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The Court determines that the ALJ did not err in evaluating Dr. Medina's December 2014 evaluation and opinions.

### b. Nurse Practitioner Durward

23

Mr. Abrahamson argues that the ALJ erred in disregarding Nurse Practitioner Durward's findings relative to his GAF scores and depression.

The ALJ discounted the significance of the GAF scores NP Durward assigned to Mr. Abrahamson for the reason discussed in section V.A.2.b., above. Mr. Abrahamson offers no specific argument as to why the ALJ's reasons are legally deficient other than to say there are no germane reasons for discounting NP Durward's GAF scores. The Court determines that the reasons the ALJ set forth are germane to NP Durward and the GAF scores she assigned. Therefore, the ALJ did not error in relation evaluating NP Durward findings.

### c. Dr. Luckett

Mr. Abrahamson argues that the "ALJ failed her duty to develop the records with Dr. Luckett's notes." (Doc. 12 at 32). Mr. Abrahamson does not state what these notes or evidence relate to, nor does he state the dates of the notes.

Dr. Luckett evaluated Mr. Abrahamson in 2008–over four years prior to the alleged onset date. (Doc. 7 at 247, 286). The ALJ owes the duty to develop the record from "at least the 12 months preceding the month in which the claimant filed the application." 20 C.F.R. § 404.1512(d). Dr. Luckett's records fall far outside this twelve month period therefore the ALJ was not obligated to develop the record in relation to these records. Furthermore, Mr. Abrahamson offers no explanation of why

the ALJ should have developed these records and has offered no explanation of how Dr. Luckett's records relate to his claim. The Court determines that the ALJ did not err in relation to Dr. Luckett's records.

### D.    Hypothetical to Vocational Expert

Mr. Abrahamson argues that the ALJ's hypothetical questions to the vocational expert were erroneous because they failed to include all of his limitations.

If a claimant shows that he cannot return to his previous job, the burden of proof shifts to the Commissioner to show that the claimant can do other kinds of work. *Magallanes*, 881 F.2d at 756. The Commissioner must show that the claimant can perform other types of substantial, gainful work that exists in the national economy. *Id*. The Commissioner should refer to realistic job opportunities. *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982). The Commissioner may engage a vocational expert to meet this burden. *Id*. at 643.

The ALJ may ask the vocational expert hypothetical questions to establish whether someone with the claimant's limitations will be able to secure employment in the national economy. *Magallanes*, 881 F.2d at 756. Hypothetical questions must set out all the limitations and restrictions of the particular claimant. *Gallant v. Heckler*, 725 F.2d 1450, 1456 (9th Cir. 1984). The ALJ is only required to include limitations that the ALJ finds to be credible and supported by substantial evidence.

*Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The vocational expert's opinion has no evidentiary value if the record fails to support the hypothetical and the hypothetical does not reflect the claimant's limitations. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988). The ALJ is free to accept or reject the restrictions presented in a hypothetical as long as they are supported by substantial evidence. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). This discretion exists even where the parties present conflicting medical evidence. *Id.*

Mr. Abrahamson's argument assumes the ALJ erred in evaluating the medical evidence and his credibility. For reasons discussed above, the ALJ's hypothetical questions to the vocational expert were based on evidence that the ALJ properly evaluated. Thus, the ALJ's hypothetical questions were supported by substantial evidence and were legally sufficient.

## VII. CONCLUSION

The ALJ's determination that Mr. Abrahamson has not been under a disability, as defined in the Social Security Act, from June 11, 2012, through the date of the ALJ's decision is supported by substantial evidence and is not based on legal error.

Therefore, the undersigned **ORDERS** the following:

1.     Mr. Abrahamson's Motion for Summary Judgment (Doc. 12) is

DENIED.

2.      The Commissioner's decision is AFFIRMED.

3.      The Clerk is directed to enter judgment in favor of the Commissioner.

DATED this 8th day of November 2017.


John Johnston
United States Magistrate Judge